# 96 DTA 103

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL DE SAN JUAN

NAOMI GONZALEZ RAMOS
Demandante -Apelante

v.

UNIVERSIDAD DE PUERTO RICO
Demandada-Apelada

Núm. KLAN-96-00042

RECEIVED
NOV 1 9 1996
SERIALS DEPARTMENT
HARVARD LAW SCHOOL LIBRARY

San Juan, Puerto Rico, a 5 de agosto de 1996

Panel integrado por su Presidente, Juez Negrón Soto
y los Jueces González Román y Urgell Cuebas

Negrón Soto, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

La apelante, señora Naomi González Ramos, recurre de la sentencia sumaria dictada el 13 de diciembre de 1995 por el Tribunal de Primera Instancia, Sala Superior de San Juan, declarando con lugar una *"Moción de Desestimación y/o Sentencia Sumaria"* presentada por la demandada-apelada, Universidad de Puerto Rico.

El tribunal recurrido desestimó la demanda incoada por la señora González Ramos,en donde alegó que no fue ascendida en su trabajo por razones discriminatorias de edad y por sufrir de la enfermedad de Parkinson.

La apelante aduce que el tribunal recurrido erró al resolver que la Universidad de Puerto Rico no es patrono conforme a la Ley 100 del 30 de junio de 1959, según enmendada, 29 L.P.R.A., sec. 146, *et seq.*; que el procedimiento sumario estatuido en la Ley Núm. 2 de 17 de octubre de 1961, 32 L.P.R.A. sec. 3118 *et seq.*, no le aplica a la U.P.R.; y que la controversia planteada está relacionada solamente con el principio de mérito, por lo que se debió agotar los remedios administrativos antes de recurrir al foro judicial.

Examinados todos los escritos presentados en este recurso procede la confirmación de la sentencia apelada. Veamos.

## I

Los hechos materiales no controvertidos que el Tribunal de Instancia tomó en consideración, son los siguientes, según surgen de la sentencia apelada:

*"1. La demandante Naomi González Ramos comenzó a trabajar para la demandada en 1969, ocupando varios puestos en el Recinto Universitario de Río Piedras, hasta alcanzar el puesto de Analista de Personal III, el cual ocupa en la actualidad.*

*2. En 1989 se le diagnosticó la enfermedad de Parkinson, dicha condición le fue notificada por la demandante a sus supervisores inmediatos. La selección de la demandante hubiera constituido un ascenso. Al presente continúa ocupando el puesto de Analista de Personal*

*3. La demandada publicó convocatoria para la plaza de Supervisor de Personal en marzo de 1992. La demandante participó de dicha convocatoria, no resultando seleccionada para ocupar el puesto. Inconforme con esta determinación acude a la Unidad Antidiscrimen del Departamento del Trabajo y Recursos Humanos, organismo que no emitió decisión respecto a su querella, ya que la demandante solicitó autorización para litigar sus planteamientos ante el foro judicial; autorización que le fue concedida.*

*4. La Universidad de Puerto Rico ha instituido mediante certificación Núm. 80, Serie 1988-89, del Consejo de Educación, el procedimiento a seguir en casos de revisiones administrativas del personal no docente relacionados al principio de mérito. Dicha certificación contiene el Reglamento sobre la Junta de Apelaciones de Personal No Docente en el Sistema Universitario. Según surge de su Reglamento, este es un organismo especializado creado para atender las apelaciones administrativas relacionadas con asuntos de personal que se interpongan por el personal no docente de la Universidad de Puerto Rico basadas en alegadas violaciones al principio de mérito.*

*5. La parte demandante no acudió a dicho foro para presentar sus planteamientos respecto al ascenso no concedido. Acude en primera instancia al foro judicial presentando sus planteamientos."*

La apelada sostiene que ambas leyes, la Ley 100, *supra*, y la Ley Núm. 2, *supra*, no son aplicables en este caso, por la que la apelante tenía que recurrir al trámite administrativo, teniendo presente que la controversia planteada está comprendida dentro del principio de mérito. ▆

## II

Primeramente discutiremos si la U.P.R. es patrono, según la definición de la Ley 100, *supra*.

El artículo 6, inciso 2 de la referida Ley Núm. 100, *supra*, define patrono como:

*"Toda persona natural o jurídica que emplee obreros, trabajadores o empleados, y al jefe, funcionario, gerente, oficial, gestor, administrador, superintendente, capataz, mayordomo, agente o representante de dicha persona natural o jurídica. **Incluirá aquellas agencias o instrumentalidades del Gobierno de Puerto Rico que operen como negocios o empresas privadas."*** 29 L.P.R.A. sec. 151. (Enfasis suplido).

En *Rodríguez Cruz v. Padilla,* **90 J.T.S. 23**, Op. del 12 de febrero de 1990, el Tribunal Supremo interpretó el alcance del término patrono y determinó que:

*"El historial legislativo de la Ley Núm. 100 revela que su objetivo principal es proteger a los empleados de la empresa privada contra todo tipo de discrimen aun cuando, por excepción, se extiende la protección a los empleados de las agencias o instrumentalidades del gobierno que operan como negocios o empresas privadas. Es importante señalar que en los debates que precedieron la aprobación de la ley surge que la frase "agencias o instrumentalidades del gobierno que operan como negocio o empresa privada se refiere únicamente a las corporaciones públicas del E.L.A."* pág. 7473.

Para determinar cuándo una agencia o instrumentalidad del gobierno funciona como empresa o negocio privado, nuestro más alto foro en el caso *A.A.A. v. Unión de Empleados A.A.A.,* 105 D.P.R. 437, 455-456 (1976), señaló como criterios a considerar:

*"...si los empleados de la agencia concernida están cubiertos por la Ley de Personal del E.L.A.; si los servicios prestados por la agencia, por su naturaleza intrínseca, nunca han sido prestados por la empresa privada; si la agencia está capacitada para funcionar como una empresa o negocio privado; si la agencia de hecho funciona como una empresa o negocio privado; el grado de autonomía administrativa de que goce; si se cobra o no por un precio o tarifas por el servicio rendido (precio que debe ser básicamente equivalente al valor del servicio); si los poderes y facultades concedidos en la ley orgánica de la agencia la asemejan fundamentalmente a una empresa privada; y si la agencia tiene o no la capacidad para dedicarse en el futuro a negocios lucrativos o actividades que tengan por objeto un beneficio pecuniario. A estos criterios pueden añadirse otros, sin pretender agotar la lista; la estructura en si de la entidad; la facultad de la agencia para demandar y ser demandada ilimitadamente; el poder de obtener fondos propios en el mercado general de valores a base de su récord económico y sin empeñar el crédito del E.L.A.: la facultad de adquirir y administrar propiedades sin la intervención del Estado; el punto hasta donde el reconocimiento a los trabajadores de la agencia de los derechos a que se refiere el primer párrafo de la Sec. 18 concuerda o no con el esquema constitucional."*

Procederemos a analizar los mismos y aplicarlos a la realidad de la U.P.R.

Primero, aunque la U.P.R. no se rige por la Ley de Personal del Servicio Público de Puerto Rico, 3 L.P.R.A. secs. 1301, *et seq.*, el Consejo de Educación Superior aprobó el Reglamento General de la U.P.R. fundamentado en el principio de mérito establecido en dicha ley. Por lo tanto, aquellos empleados cubiertos por el referido reglamento, como la apelante, gozan de la protección de que serán seleccionados, adiestrados, ascendidos, retenidos y tratados en todo lo referente a su empleo en consideración al mérito y a sus capacidades. El Reglamento Sobre Procedimientos Apelativos Administrativos de la U.P.R., en su Artículo 6 provee para los empleados un procedimiento de

apelación para revisar cualquier determinación que entiendan va en detrimento de sus derechos protegidos por el principio de mérito. Por lo tanto, tenemos que concluir que se configura este criterio para que la U.P.R. no se considere una empresa o negocio privado.

Segundo, cuando los servicios rendidos por la agencia, por su naturaleza intrínseca, nunca han sido ofrecidos por la empresa privada, su naturaleza tiende a ser gubernamental, más bien que de un negocio privado. En cambio, si la instrumentalidad rinde servicios como los que prestan empresas privadas, y lo hace con propósitos lucrativos, su naturaleza tiende a ser la de un negocio privado. *Junta de Relaciones del Trabajo v. Corporación del Conservatorio de Música*, **96 J.T.S. 43,** Op. del 20 de marzo de 1996. Aunque la labor de impartir educación es compartida con entidades privadas la finalidad de promover tal educación a niveles de excelencia, sobre todo en relación con jóvenes talentosos de escasos recursos, convierten a la U.P.R. en una institución singular de clara naturaleza gubernamental. La U.P.R. es el órgano de la educación superior que tiene la misión esencial de alcanzar unos objetivos delimitados por ley en cumplimiento de su obligación de servicio al Pueblo de Puerto Rico y a su debida fidelidad a los ideales de nuestra sociedad democrática. 18 L.P.R.A. sec. 601. Los objetivos primordiales de la U.P.R. son promover el saber, investigar, educar y proveer servicios a la ciudadanía, industria y gobierno. La Universidad no opera con ánimo directo ni indirecto de lucro. *Sepúlveda v. U.P.R.*, 115 D.P.R. 526, 527 (1984).

Por otro lado, la U.P.R. tiene unas facultades corporativas que la asemejan fundamentalmente a una empresa privada. A esos efectos dispone el artículo 3 de dicha Ley Núm. 1 del 20 de enero de 1966, según ha sido enmendada, que:

*"La Universidad de Puerto Rico tendrá todas las atribuciones, prerrogativas, responsabilidades y funciones propias de una entidad corporativa encargada de la educación superior, confiriéndole autoridad para demandar y ser demandada; adquirir y poseer bienes muebles o inmuebles, e hipotecar, vender o en cualquier forma enajenar los mismos; contraer deudas, celebrar contratos, invertir sus fondos en forma compatible con los fines y propósitos de este capítulo; adoptar y usar un sello oficial; aceptar y administrar donaciones, herencias y legados. Tendrá la custodia, el gobierno y la administración de todos sus bienes de cualesquiera clase, y de todos sus fondos. (18 sec. 602 (f) (1))."*

La concesión de estas facultades tiene como objetivo el proveerle a la U.P.R. la mayor autonomía posible para asegurar su debido funcionamiento acorde con su más amplia libertad de cátedra y de investigación científica. Ahora bien, lo anterior no la convierte en una empresa privada dedicada a negocios lucrativos. Su estructura es claramente distinguible de cualquier empresa privada, ya que no opera con ánimo directo ni indirecto de lucro y por consiguiente no es negocio. *Sepúlveda v. U.P.R., supra*, pág. 527. ■

Tercero, en cuanto al grado de autonomía fiscal de que disfruta la misma, la U.P.R. como corporación pública, de origen legislativo, encargada de la educación superior en Puerto Rico, *"tiene una obligación de servicio al Pueblo de Puerto Rico." Sepúlveda v. U.P.R., supra*, pág. 527. Dicha entidad educativa se nutre de fondos provenientes del *"Fondo General del Tesoro Estatal"*. 18 L.P.R.A. sec. 621-1. Así, depende esencialmente de los fondos que la Asamblea Legislativa le asigne cada año. A estos efectos se expresó en *U.P.R. v. Asociación,* **94 J.T.S. 92**, Op. del 13 de junio de 1994, pág. 12072, que:

*"En el contexto clásico, las empresas que operan con fines de lucro perciben ganancias que provienen de su capacidad de vender sus productos a precio que sobrepasan sus costos. Bajo este esquema, las decisiones gerenciales de la empresa tienen un impacto directo sobre sus ingresos, ya sea mediante el control de los costos o el aumento de los precios. **Este esquema no se da ni puede darse en la U.P.R.** De las propias determinaciones de la Junta se desprende que **alrededor del ochenta y seis porciento (86%) del presupuesto de la Universidad proviene del Fondo General del E.L.A. Ese porciento responde a una fórmula establecida por ley sobre la cual la U.P.R. no tiene control."* (Énfasis suplido).

De hecho, sus estudiantes sólo cubren una ínfima parte del costo pagando una cantidad limitada por concepto de matrícula. Sepúlveda, *supra*, pág. 527. Por su propia naturaleza de institución pública,

la U.P.R. está impedida de convertirse en un centro docente dirigido a ofrecer educación a sólo aquellos que puedan pagar sus altos costos.

Aplicados los criterios señalados en *A.A.A. v. Unión de Empleados de A.A.A., supra,* es forzoso concluir que la U.P.R. no es *"patrono"* bajo la Ley 100, *supra.* Por ello, el tribunal recurrido no erró al hacer tal determinación.

### III

Lo planteado en el segundo señalamiento de error, depende casi totalmente del resultado a que hemos llegado en el primero, toda vez que es sabido que el procedimiento sumario de la Ley Núm. 2 del 17 de octubre de 1961, *supra,* sobre reclamación de salarios, no está disponible en acciones contra el gobierno y sus instrumentalidades públicas.

Habiéndose establecido anteriormente que la U.P.R. no es patrono bajo la Ley Núm. 100, *supra,* y que no opera como un negocio privado, el procedimiento sumario de la Ley Núm. 2, *supra,* tampoco le es aplicable. Como consecuencia, el segundo error imputado al tribunal de instancia no se cometió.

### IV

Por último, nos corresponde determinar cuál foro ostenta la jurisdicción original para ventilar la controversia. La señora González Ramos acudió al foro judicial en la creencia de un genuino reclamo de sus derechos conforme lo provee la Ley 100, *supra.* Como concluimos anteriormente, ella no puede amparar su reclamo en el referido estatuto.

Al no aplicarle dicho procedimiento, hay que analizar ante cuál foro le corresponde presentar la acción. En su sentencia, el tribunal de instancia determinó que era la Junta de Personal No Docente el foro correspondiente para atender en primer lugar la reclamación. Actuó correctamente.

En 1975 se adoptó la Ley de Personal del Servicio Público de P.R., Ley Núm. 5 de 14 de octubre de 1975, según enmendada, 3 L.P.R.A. secs. 1301, *et seq.,* excluyendo expresamente a la U.P.R. de su aplicación. Las normas estatutarias y reglamentarias concernientes revelan que la intención del legislador fue delegar a la U.P.R. amplios poderes en relación a los derechos y deberes de sus empleados. 18 L.P.R.A. sec. 602(e)(5), (12) y (15). *García Cabán v. U.P.R.,* 120 D.P.R. 167, 175 (1987).

En cumplimiento al mandato de la ley, la U.P.R. estableció un Reglamento General que delimita el alcance de sus poderes en las áreas de clasificación de puestos, selección, ascensos, traslados y descensos, adiestramientos, retención y nombramientos de su personal no docente. A esos efectos el Consejo de Educación Superior creó un procedimiento cuasi-judicial, regulado por el Reglamento sobre la Junta de Apelaciones del Personal No Docente en el Sistema Universitario, aprobado el 29 de diciembre de 1988 por el Consejo de Educación Superior. Sus artículos 1, 6 y 10 disponen lo siguiente:

*"Artículo 1.* **Declaración de Propósitos**

*La presente certificación tiene el propósito de crear un organismo especializado en la Universidad de Puerto Rico para atender las apelaciones administrativas relacionadas con asuntos de personal que se interpongan por el personal no docente. Estas deben referirse a decisiones finales de las autoridades nominadoras en el sistema universitario, y deberán estar basadas en alegadas violaciones al principio de mérito según queda establecido en las disposiciones legales y reglamentarias universitarias.*

*Artículo 6.* **Jurisdicción Apelativa**

*La Junta sólo tendrá jurisdicción apelativa, la cual ejercerá atendiendo las apelaciones que se interpusieren por parte del personal no docente contra decisiones finales de las autoridades nominadoras en el sistema universitario que estén basadas en alegadas violaciones al principio de mérito en cualquiera de las siguientes áreas: Clasificación de puestos; reclutamiento y selección;*

*ascensos, traslados y descensos; adiestramientos; retención y nombramientos. En los casos de contratos de servicios, la Junta antes de entrar en los méritos del caso determinará si tienen jurisdicción en la controversia. Para efectos de la Junta, ésta tendrá jurisdicción en este tipo de caso cuando el tipo de contrato tenga, contemple o conlleve funciones, sueldo o tareas similares a la de un nombramiento.*

*Artículo 10. **Revisión, Reconsideración ante el Consejo de Educación Superior y Revisión Judicial***

*Las decisiones de la Junta sólo podrán ser revisadas por el Consejo de Educación Superior, el cual emitirá la decisión final en el sistema universitario sobre derechos y deberes del personal no docente en relación con las materias bajo la jurisdicción de la Junta. Cualquier solicitud de revisión ante el Consejo de Educación Superior deberá hacerse dentro del término de treinta (30) días contados a partir de la fecha en que la Junta notifique su decisión a la parte afectada, conforme al procedimiento establecido en el Reglamento sobre Procedimientos Apelativos Administrativos de la Universidad de Puerto Rico, según enmendado.*

*La parte adversamente afectada por una resolución, u orden parcial o final del Consejo de Educación Superior podrá, dentro del término de veinte (20) días desde la fecha de archivo en autos de la notificación de la resolución u orden, presentar una moción de reconsideración de la resolución u orden. El Consejo de Educación Superior dentro de los quince (15) días de haberse presentado dicha moción deberá considerarla. Si la rechaza de plano o no actuare dentro de los quince (15) días, el término para solicitar revisión comenzará a correr nuevamente desde que se notifique dicha denegatoria o desde que expiren esos quince días, según sea el caso. Si se tomare alguna determinación en reconsideración, el término para solicitar revisión empezará a contarse desde la fecha en que se archive en autos una copia de la notificación de la resolución del Consejo de Educación Superior resolviendo definitivamente la moción. Dicha resolución deberá ser emitida y archivada en autos dentro de los noventa (90) días siguientes a la radicación de la moción. Si el Consejo de Educación Superior dejare de tomar alguna acción con relación a la moción de reconsideración dentro de los noventa (90) días de haber sido radicada una moción acogida para resolución perderá jurisdicción sobre la misma y el término para solicitar la revisión judicial empezará a contarse a partir de la expiración de dicho término de noventa (90) días salvo que el Tribunal, por justa causa, autorice al Consejo de Educación Superior una prórroga por un tiempo razonable para resolver."*

La Moción de Reconsideración ante el Consejo es un requisito jurisdiccional para poder solicitar revisión judicial.

De estos preceptos estatutarios se desprende que la Junta de Apelaciones del Personal No Docente del Sistema Universitario tenía jurisdicción primaria exclusiva para atender la apelación de la señora González Ramos. ■ De su decisión había que recurrir al Consejo de Educación Superior para entonces, de la decisión de éste, previa moción de reconsideración, solicitar la revisión judicial. ■ Siendo ello así, no es necesario hablar de la doctrina de agotamiento de remedios ni sus excepciones, la cual aplica cuando el foro administrativo y el judicial tiene jurisdicción concurrente. *Rivera Ortiz v. Municipio de Guaynabo*, **96 J.T.S. 101**, Op. del 28 de junio de 1996. ■

No obstante, aun si en el caso ante nosotros la jurisdicción primaria no fuera una exclusiva y sí una concurrente, o se considerara que por razón de sus alegaciones constitucionales o de la aplicación de cualquier otro estatuto lo requieren, *Rivera Flores v. Compañía ABC, H/N/C Mc Graw of P.R. Inc., supra*, al aplicar la doctrina de agotamiento de remedios, forzosamente se llegaría a igual resultado ya que el apelante también tendría que agotar el remedio administrativo para recurrir al trámite judicial. Ello es así ya que la apelante no ha demostrado la existencia de un agravio de sensidad en violación de sus derechos civiles que justifique el obviar el cauce administrativo. *García Ortiz v. Policía de Puerto Rico,* **96 J.T.S. 31,** Op. del 11 de marzo de 1996; *Mercado Vega v. U.P.R.*, **91 J.T.S. 41,** Op. del 18 de abril de 1991. Unas simples alegaciones concluyentes, al efecto de que se le está causando o se le podría causar daño irreparable, ciertamente no constituyen la demostración concreta de hechos para inferir que la decisión de la U.P.R. de no conferirle un ascenso, estuvo motivada por consideraciones inconstitucionales o que medió la violación de sus derechos civiles. Las alegaciones escuetas del

apelante en la demanda no cumplen con los criterios esbozados en *García Cabán v. U.P.R.,* 120 D.P.R. 167, 182 (1987).

Tampoco la apelante hizo alegaciones claras de violaciones de suficiente intensidad a sus derechos individuales ni alegaciones sobre daños irreparables concretos. La apelante estaba trabajando y recibía ingresos. Su reclamo consistía en que se le había negado un ascenso y no el empleo; por lo que el agravio alegado no era uno de patente intensidad.

Además, las alegaciones de la apelante tratan sobre los méritos de una controversia de carácter técnico, como es el ascenso a un puesto, sin presentarse las circunstancias ni los hechos sostenidos por prueba documental y testifical que dieron lugar a ello, lo que haría imperativo que fuera la Junta de Personal No Docente de la U.P.R. quien evaluara y adjudicara la controversia por ser el organismo administrativo que tiene la pericia y el conocimiento especializado necesario en esta materia. Así el remedio administrativo sería el remedio efectivo y adecuado para iniciar la querella de la apelante, con la absoluta protección de sus derechos constitucionales. *Vda. de Iturregui v. E.L.A.,* 99 D.P.R. 488 (1980).

Así bajo cualquier escenario el ilustrado tribunal de instancia actuó correctamente.

Por los fundamentos antes expuestos, se confirma la sentencia recurrida.

Regístrese y notifíquese.

Así lo acordó el Tribunal y lo certifica la Secretaria General.

Sonia Pacheco Román<br>
Secretaria General

## ESCOLIOS 96 DTA 103

**1.** Los alegatos de las partes deben presentarse en la forma provista en las Reglas 3.5 (O) del Reglamento del Tribunal de Circuito de Apelaciones de enero de 1995 ó 73(B) y (C) del Reglamento de mayo de 1996, según sea aplicable, que requieren incluir una cubierta y un índice, lo que no hizo en este caso la apelada.

**2.** Estableciendo una analogía con los municipios para efecto de determinar si son patronos bajo la definición de la Ley 100, *supra*, se concluyó en *Rodríguez Cruz v. Padilla,* **90 J.T.S. 23**, Op. del 12 de febrero de 1990, que: *"el propósito para el cual existe un municipio no puede sostenerse que el mismo opere como un negocio o empresa privada según el significado usual y corriente de estos términos. Un municipio no opera con fines de lucro como los negocios privados, sino con fines de servicio al público".* Esta doctrina se reiteró en *Rivera Briceño v. Rodríguez,* **91 J.T.S. 103**, Op. del 20 de diciembre 1990, y más recientemente en *U.P.R. v. Asociación Puertorriqueña de Profesores Universitarios,* **94 J.T.S.92**, Op. del 13 de junio de 1992, donde se señaló que la U.P.R. no es una institución común y corriente, ni tampoco un establecimiento industrial o comercial, sino la principal institución de educación superior del país, donde el producto final es fomentar el desarrollo de la cultura y el saber de nuestro pueblo.

**3.** La demanda presentada contra la U.P.R. estaba amparada también en la Ley Federal de Ciudadanos con Impedimentos, 42 U.S.C. secs. 12101 *et seq.* Cuando un empleado presenta una acción al amparo de dicha ley está obligado a agotar la vía administrativa antes de acudir al foro judicial. *Rivera Flores v. Compañía ABC H/N/C Mc Graw of P.R. Inc.,* **95 J.T.S. 22,** Op. del 15 de febrero de 1995. Contrario a nuestra legislación, la Ley Núm. 100, *supra,* no aplicaba a nuestro caso, en la esfera federal cualquier reclamación en violación al Título VII de la Ley Federal de Derechos Civiles, 42 U.S.A. sec. 2000 e, requiere que se agote el trámite administrativo previo a la presentación de una acción judicial. *Matos Mulero v. Roche Products, Inc.,* **93 J.T.S. 6,** Op. del 14 de enero de 1963, pág. 10315.

**4.** A esos efectos dijimos en *La Luz Alvarado v. P. C. Jiménez Vélez,* Núm. KLAN-95-01083, Op. del 26 de marzo de 1996, pág. 5, que *"[l]as revisiones administrativas del personal no docente de la Universidad de Puerto Rico relativas al principio de mérito se rigen por la Certificación del Consejo de Educación Superior Núm. 80, Serie 1988. El Artículo 6 de dicha certificación dispone que la Junta tendrá jurisdicción apelativa contra decisiones finales de la autoridad nominadora en el sistema universitario que estén basadas en alegadas violaciones al principio de mérito en áreas tales como la de retención y nombramientos".*

**5.** El hecho de que la apelante solicitara autorización a la Unidad Antidiscrimen del Departamento del Trabajo para litigar sus planteamientos ante el foro judicial, no tiene ninguna consecuencia en lo aquí planteado ya que su reclamación estaba sustentada en la Ley 100, *supra*, que no le aplica, y que la jurisdicción del foro administrativo es una exclusiva.

**6.** En *García Cabán v. U.P.R., supra,* al considerar la procedencia de una demanda de injunction permanente y daños y perjuicios como resultado de que la U.P.R. no otorgó un nuevo contrato probatorio a un empleado docente, se entró a considerar las doctrinas de jurisdicción primaria y de agotamiento de remedios. Nuestro más alto foro devolvió el caso a las estructuras apelativas universitarias, Presidente y Consejo Superior de Educación, para que una vez éstos emitieran alguna decisión, pudiera recurrirse a la revisión judicial. Dicho pleito es diferente al de nosotros ya que se encontraba en una etapa apelativa administrativa distinta, se trataba de un empleado docente en lugar de uno no docente, y se estaba interpretando la sección 6 del Reglamento de Procedimientos Apelativos para el Sistema Universitario y no el Reglamento sobre la Junta de Apelaciones del Personal No Docente, *supra*, que fue aprobado luego de ese caso, en 1988.